(C. D. 1804)

UNITED SUPPLY & MFG. CO., THE CRISPIN COMPANY *v.* UNITED STATES

United States Customs Court, Second Division

(Decided September 13, 1956)

*Milton Schwartz* for the plaintiffs.

*George Cochran Doub*, Assistant Attorney General (*William J. Vitale* and *Henry J. O'Neill*, trial attorneys), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: The merchandise to which protest 266240–K/4765 relates consists of seamless hot-rolled steel oil-well casings of various diameters, lengths, and weights, not screwed and socketed nor threaded at the ends.

The articles in protest 269156–K/4892 are likewise seamless hot-rolled steel oil-well casings similar to those in the previous case, except that the casings are screwed and socketed at the end.

The collector of customs classified said casings as all other finished or unfinished iron or steel tubes, not specially provided for, and imposed duty at the rate of 12½ per centum ad valorem, pursuant to the provisions of paragraph 328 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 328), as modified by the Annecy Protocol to the General Agreement on Tariffs and Trade, 84 Treas. Dec. 403, T. D. 52373, and 85 Treas. Dec. 116, T. D. 52462.

In protest 269156–K, plaintiff claims that the merchandise should be classified as structural shapes of iron or steel, advanced beyond hammering, rolling, or casting, in paragraph 312 of said act (19 U. S. C. § 1001, par. 312), and subjected to duty at the rate of 7½ per centum ad valorem, if entered on or after July 6, 1951, in accordance with the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T. D. 52739.

With respect to protest 266240–K, plaintiff claims that the merchandise to which that protest relates should be classified as structural shapes of iron or steel, not advanced beyond hammering, rolling, or casting, and dutiable at the rate of one-tenth of 1 cent per pound, as provided in said paragraph 312, as modified by the Torquay protocol

to said general agreement, 86 Treas. Dec. 121, T. D. 52739, effective July 6, 1951.

The text of the statutes involved is here set forth:

Paragraph 328, as modified, *supra*:

Finished or unfinished iron or steel tubes not specially provided for:
    If suitable for use in the manufacture of ball or roller bearings_ 17½% ad val.
    Other_____ 12½% ad val.

Paragraph 312 (effective July 6, 1951), *supra*:

Beams, girders, joists, angles, channels, car-truck channels, tees, columns and posts, or parts or sections of columns and posts, and deck and bulb beams, together with all other structural shapes of iron or steel:
    Not assembled, manufactured or advanced beyond hammering, rolling, or casting_____ 0.1¢ per lb.
    Machined, drilled, punched, assembled, fitted, fabricated for use, or otherwise advanced beyond hammering, rolling, or casting_____ 7½% ad val.

At the trial of this case at Houston, Tex., three witnesses were called, each of whom testified for the plaintiffs, and, at the close of the trial, a motion was made by plaintiffs "that the record in the *Winkler-Koch* and the *Humble Oil* cases [30 Cust. Ct. 26, C. D. 1494, affirmed in 41 C. C. P. A. (Customs) 121, C. A. D. 540, and 32 Cust. Ct. 32, C. D. 1577, respectively] be incorporated with this case."

Defendant objected to the incorporation of the records on the ground "that the question of fact is not substantially the same in that the merchandise is different" and stated that, if the motion should be granted, it would request the court to subpoena the witnesses in the incorporated cases for purposes of cross-examination.

The motion was held in abeyance by the trial judge to be acted upon later. We are satisfied from an examination of the various records that the questions of law and fact in the case at bar are substantially the same as those in the *Winkler-Koch* and *Humble Oil* cases, *supra*. We, accordingly, overrule the objection of defendant and grant plaintiffs' motion, allowing an exception to the defendant.

At the conclusion of the proceedings at Houston, the case was transferred to New York, upon motion of defendant, for the avowed purpose of introducing the testimony of several witnesses. However, when the case subsequently appeared on the New York calendar, plaintiffs rested, and defendant announced that the "Government has no proof to offer of those consolidated cases and likewise rests and is prepared to submit." Plaintiffs requested time for filing a brief, and defendant stated that it "asks for no time for briefs." The case was then submitted for decision.

The first of the three witnesses who testified on behalf of the plaintiffs was Charles G. King, Jr., vice president of United Supply & Manufacturing Co., in charge of sales for its Louisiana and Texas gulf coast operations, having been identified with the oil industry for 12 years. His company is a major purchaser and distributor of what are known as oil country goods.

The second witness was Andre A. Crispin, president and managing partner of The Crispin Co., importer and distributor of steel products, including oil country goods.

The third witness was John H. Garner, consulting petroleum engineer, graduate of the University of Texas, licensed in the State of Texas, and a member of the American Institute of Mining and Metallurgical Engineers.

These witnesses were men of ability, experience, and intelligence, with an intimate knowledge of the terminology and technology in the field of their activities in the oil-producing industry.

Certain salient facts of record establish that the imported commodity is known as "limited service" casing, doubtless deriving that characterization from the fact that, while it does not measure up to the standards established by the American Petroleum Institute, nevertheless, within certain limitations, the imported casings serve the same purpose performed by casings of approximate weight and size which are of the API standards. The testimony discloses that the subject casing could be set at a depth of 3,000 or 4,000 feet and serve the purpose of API casing at that depth. In other words, for a certain depth, it seems clear that the limited service casing may be used interchangeably with API casing to support the wall of a hole that has been drilled and as a protective medium for the tubing, which is subsequently run inside the casing to bring oil to the surface. The evidence also establishes that, in the oil industry, the merchandise is known as casing and not as tubes or tubing, it being differentiated in size, weight, and use. Limited casing is so constructed that it will withstand not only great hydrostatic pressure from the outside to prevent the casing from collapsing, but also bursting pressure from the inside, as well as vertical pressure and tension.

With regard to the use of the limited service casing, witness Garner, when asked "If casing is calculated to be set to a depth of 3,000 feet, regardless of whether it was limited or otherwise, or API casing, is there any difference in the use to which it is put?" answered, "No." And, when asked, on cross-examination, "What is meant by limited service? It cannot be used for the same purposes as API casing of similar strength?" he replied, "No, limited service means that the casing was rejected from API classifications because it did not meet certain specifications. It can be a variation in wall thickness, or

the composition of the steel, or a variation in tensile strength, any number of variations, but limited service simply means it did not meet certain standards."

As stated by the witness Crispin, "* * * limited service is offered for sale in most cases when API casing or other types of casing are not available." He also stated that limited service casing "* * * means casing that differs in specifications and tolerances from so-called API casing."

The facts above recited were established by witnesses of unquestioned probity and proficiency, with practical knowledge of the oil industry, and have not been challenged or contradicted in any manner.

The character, quality, and use of the imported casings clearly bring them within the scope of our decisions in *The Winkler-Koch Engineering Company* v. *United States*, 30 Cust. Ct. 26, C. D. 1494, affirmed in *United States* v. *The Winkler-Koch Engineering Company*, 41 C. C. P. A. (Customs) 121, C. A. D. 540, and in *Humble Oil & Refining Co. et al.* v. *United States*, 32 Cust. Ct. 32, C. D. 1577. In both of those cases, seamless hot-rolled API casings in varying diameters, lengths, and weights, employed in the construction of oil wells, were held to be, in fact, structural shapes of the kind made dutiable in paragraph 312 of the Tariff Act of 1930, as modified by applicable trade agreements.

In accordance with the principles of decision announced in the above-cited cases and upon the facts established by the record herein, we find and hold that the casings in controversy are structural shapes within the purview of said paragraph 312, as modified, and subject to duty at the appropriate rates provided therein, as alleged by plaintiffs. Those claims in plaintiffs' protests are, therefore, sustained and judgment will be entered directing the collector of customs at Galveston to reliquidate the entries accordingly.