(C.D. 4225)

Imperial Pipe & Supply Co. *v*. United States

United States Customs Court, Second Division

(Decided June 1, 1971)

*Glad & Tuttle* (*Robert Glenn White* of counsel) for the plaintiff.

*L. Patrick Gray, III*, Assistant Attorney General (*Patrick Gill* and *Gilbert Lee Sandler*, trial attorneys), for the defendant.

Before RAO, Chief Judge, FORD, and NEWMAN, Judges

NEWMAN, Judge: Plaintiff imported certain pipes from Holland, described on the invoice as "Substandard casing for structural purposes", and entered the merchandise at the port of Los Angeles, California on September 13, 1961. Upon liquidation, the collector of customs assessed the goods with duty at the rate of 10½ per centum ad valorem under the provision in paragraph 328 of the Tariff Act of 1930, as modified, for iron and steel tubes not specially provided for.

Plaintiff protests the date of duty assessed and claims that the merchandise is properly dutiable at the rate of 0.1 cent per pound under the provision in paragraph 312 of said tariff act, as modified, for structural shapes of iron or steel.

We sustain the protest.

## STATUTES INVOLVED

Classified under:

Paragraph 328 of the Tariff Act of 1930, as modified by T.D. 54108:
Finished or unfinished iron or steel tubes not specially provided for:
If suitable for use in the manufacture of ball or roller bearings_____ * * *
Other _____ 10½% ad val.

Claimed under:

Paragraph 312 of the Tariff Act of 1930, as modified by T.D. 52739:
Beams, girders, joists, angles, channels, car-truck channels, tees, columns and posts, or parts or sections of columns and posts, and deck and bulb beams, together with all other structural shapes of iron or steel:
Not assembled, manufactured or advanced beyond hammering, rolling, or casting___ 0.1¢ per lb.

## ISSUE PRESENTED

There is no dispute that the importation consists of iron or steel tubes, and hence the issue is narrowed to whether the merchandise is more specifically provided for in the tariff act as "other structural shapes".[1]

---

[1] Defendant has raised no issue respecting whether the merchandise was "not assembled, manufactured or advanced beyond hammering, rolling, or casting" within the purview of paragraph 312, as modified.

405

Plaintiff called Thomas J. Kirby, its president; defendant called Richard Asquith, manager of tubular sales for Kaiser Steel Corporation. The official papers were received in evidence without being marked.

Kirby testified that plaintiff is in the steel pipe business, dealing primarily in "structural pipe" used as columns in buildings, posts, and as poles for neon advertising signs; that he had 31 years of experience with plaintiff after some years of previous experience with another pipe firm; and that he had travelled throughout the United States in connection with his business in 1960–61 and prior thereto.

Mr. Kirby testified that he purchased the instant substandard casings, which were seamless (not welded) pipes, fourteen to thirty-five feet in length, which failed to meet the internal liquid pressure specifications for oil well casings; that he had been familiar with substandard casings since 1930 or 1931; that he had bought and sold such merchandise; and that in 1961 he had seen substandard casings in New York City, Brooklyn, Chicago, San Francisco, Los Angeles and Texas used as columns in buildings under an I-beam or L-beam and as poles for neon advertising signs; that based upon his observation the substandard casings were chiefly used for those purposes, but "could be" used as culverts or flagpoles.

The witness further stated that in 1961 there were other United States importers of substandard oil well casings who sold such merchandise to the construction trade; and that in 1961, plaintiff "possibly" made 30 to 40 percent of the United States importations of substandard oil well casing.

Continuing, Kirby explained that sometimes the casings were made into "reduction poles" by joining lengths of different diameters, viz., by inserting a smaller diameter pipe inside a larger one and welding them together; that when substandard casings were used for building neon advertising signs, they were first welded together, if made into "reduction poles", and then placed in the ground and set in concrete; that the sign was then placed on the pole; that four inch to thirty-six inch (diameter) pipe was used for "these sign structures", and the sign posts were fifty or sixty feet in the air; that sometimes a large sign was erected on two poles, or a beam was placed on top of a pole (to make a T-joint), or across two poles, and the sign was then welded to the beam.

Finally, Kirby stated that he considered the uses for substandard casings to be that of such structural shapes as columns or posts, "or anything that would not be used for pressure".

Defendant's witness Asquith testified concerning the uses of substandard casing. However, on cross-examination he admitted that

Kaiser did not produce oil well casing and that he had never observed the use of substandard oil well casing. Moreover, we find no indication in the record that Asquith possessed any professional degree or special academic training that would have qualified him to testify as an expert witness concerning the use of substandard oil well casing.

In the absence of Mr. Asquith's qualifications to testify concerning the use of substandard oil well casing, his testimony in this case is of little or no probative value or weight. Accordingly, it would be pointless to summarize Asquith's testimony here, and we do not do so.

1.

Our appellate court, in *United States* v. *Humble Oil & Refining Co. et al.*, 46 CCPA 138, 140–41, C.A.D. 717 (1959), observed that "no precise definition can be laid down to cover the term 'structural shape'". The appellate court held:

> Whether a particular article falls within the meaning of that term [structural shape] must be determined on the basis of the particular circumstances of the case under consideration, including the purpose for and manner in which the article is used, as well as whether or not it forms a part of a structure.

Had the substandard casings been usable for their originally intended purpose (oil wells), they would have been dutiable, following the adjudicated cases, as structural shapes under paragraph 312, as modified. *United States* v. *The Winkler-Koch Engineering Co.*, 41 CCPA 121, C.A.D. 540 (1953); *Humble Oil & Refining Co. et al.* v. *United States*, 32 Cust. Ct. 32, C.D. 1577 (1954). This would be true even if their use in oil wells was limited because of certain defects. *United Supply & Mfg. Co. et al.* v. *United States*, 37 Cust. Ct. 95, C.D. 1804 (1956).

Inasmuch as the instant casings could not be used in oil well construction, they are not classifiable as structural shapes unless the record shows that they served a structural function in some other structure.

Kirby's testimony establishes, without contradiction, that substandard oil well casings were used in buildings to support I-beams or L-beams, and also to support neon advertising signs. Consequently, the casings bear a functional resemblance to such vertical load-bearing members as columns and posts, which are among the exemplars named in paragraph 312. Kirby explained that some large signs required the additional use of beams forming T-joints on the poles; and in some cases, cross-beams and two posts were required to support a sign structure. Moreover, the court can take judicial notice of the fact that outdoor advertising signs, particularly at a height of fifty or sixty feet, must be constructed to withstand strong wind.

On cross-examination, defendant elicited testimony from Kirby that substandard casings "could be" used as culverts and flagpoles. However, these *possible* uses also exist for casings which meet the required specifications for oil wells. Such casings have been judicially determined to be structural shapes for tariff purposes.

Under all the facts and circumstances of this case, including the purpose for and the manner in which the substandard oil well casings were used in buildings and in connection with neon advertising signs, we conclude that the merchandise falls within the purview of paragraph 312, as modified, as structural shapes.

2.

Defendant strenuously argues that even if substandard oil well casings are within the purview of paragraph 312 as structural shapes, Congress nevertheless has manifested its intent to provide for such merchandise under the provision in paragraph 328 for "iron or steel tubes". The predicate of defendant's argument respecting Congressional intent is an alleged legislative ratification of the following decisions: *Loomis Scrap Iron Co.* v. *United States*, 30 Treas. Dec. 135, Abs. 39168 (1915); *I. Lanski & Son Scrap Iron Co.* v. *United States*, 30 Treas. Dec. 830, Abs. 39752 (1916); *C. J. Tower & Sons et al.* v. *United States*, 46 Treas. Dec. 171, T.D. 40384 (1924); *C. J. Tower & Sons* v. *United States*, 50 Treas. Dec. 451, T.D. 41872 (1926). Defendant, however, does not urge that the foregoing decisions should be followed on the theory of *stare decisis*.

In *Lanski* and *Loomis*,[2] the Board of General Appraisers held that certain butt-welded iron or steel pipes, defective for high pressure purposes and used for flagpoles, fences, guardrails, building columns or supports, were properly classified under the provision in paragraph 127 of the Tariff Act of 1913 for lap-welded or butt-welded pipes of iron or steel, rather than as scrap steel fit only for remanufacture, entitled to free entry under paragraph 518 of said act.[3] There was no issue in either *Lanski* or *Loomis* as to whether the welded pipes were structural shapes.

In the earlier *Tower* case, T.D. 40384, the Board of General Appraisers again held that certain pipe, defective for high pressure purposes and used in making stanchions, fences, awnings, etc., was properly classified under paragraph 127 of the Tariff Act of 1913 for lap-welded or butt-welded pipes of iron or steel, rather than under the provision in paragraph 518 of said act for scrap iron or steel. Additionally, the Board, without reciting any reason, rule, or authority, held that "the articles are lap-welded or butt-welded pipes

---

[2] The *Lanski* and *Loomis* decisions were noted by the United States Tariff Commission in its *Summary of Tariff Information* (1920) at page 214.

[3] In *Loomis*, the importer's claim under paragraph 518 was sustained insofar as it covered pipe fit only for remelting.

of iron or steel, and as such are more specifically provided for in paragraph 127 than under the provision in paragraph 104 for 'structural shapes of iron or steel' ".

If the Board's unsupported conclusion respecting the relative specificity of the provisions for lap-welded or butt-welded pipes of iron or steel and structural shapes was approved by Congress (which we need not decide), the classification of the instant pipe was not under the provision covering welded pipes and tubes, but rather, was under the provision for iron or steel tubes, not specially provided for.

In the second *Tower* case, T.D. 41872,[4] so-called "pipe seconds", which because of defects were incapable of holding water and were used for making fences, awnings, stanchions, etc., were held by this court to be excluded from the provision in paragraph 328 of the Tariff Act of 1922 for lap-welded or butt-welded pipes of iron or steel, and were held to be dutiable under the provision in the same paragraph for iron or steel tubes, not specially provided for, as claimed by plaintiff therein.

The basis for excluding the merchandise in the second *Tower* case from the provision for lap-welded or butt-welded pipes was that plaintiff had established that the commercial understanding of the terms "lap-welded pipe" and "butt-welded pipe" included only pipe capable of holding water under pressure. No issue was presented in the second *Tower* case as to whether the "pipe seconds" were structural shapes.

In brief, we have carefully analyzed the holdings in the two *Tower*, *Lanski* and *Loomis* cases in light of the rule respecting legislative adoption of judicial interpretation, but we find no indication that Congress intended that substandard oil well casings be classified under paragraph 328 of the Tariff Act of 1930, as iron or steel tubes, not specially provided for, irrespective of whether they are specially provided for as structural shapes under paragraph 312. These competing provisions were not involved in the two *Tower*, *Lanski* and *Loomis* cases. "It is well established that the rule of legislative ratification of judicial decision extends only to the precise points judicially determined". *North Coast Importing Co. et al.* v. *United States*, 24 CCPA 182, 186, T.D. 48644 (1936). Plainly, then, when the issue is relative specificity, the rule should not be applied where the competing provisions in the previous cases differ from those in the present case.

### 3.

Respecting the relative specificity of the provisions involved in the present case, "[p]rior adjudications of paragraph 312 have held

---

[4] This decision was summarized in the "Memorandum of Court Decisions Affecting Tariff Act of 1922" prepared for use of the Committee on Ways and Means (Tariff Act of 1930 Committee Reports to Accompany H.R. 2667, 71st Cong., 1929), in connection with paragraph 328 (pp. 17–18).

that tubes may be structural shapes". *United States* v. *Baron Tube Co. et al.*, 47 CCPA 69, C.A.D. 730 (1960). Indeed in *The Winkler-Koch Engineering Co.* v. *United States*, 30 Cust. Ct. 26, C.D. 1494, *aff'd sub nom. United States* v. *The Winkler-Koch Engineering Co.*, 41 CCPA 121, C.A.D. 540 (1953), this court stated (30 Cust. Ct. at 36):

> Being of the opinion that the casings in controversy are in fact and in law "structural shapes," it is a question of no particular importance here whether or not they may also be "pipes" or "tubes." It is obvious that the enumeration of structural shapes in paragraph 312 is a use provision which the courts have held, in the absence of compelling reasons to the contrary, prevails over an *eo nomine* or a descriptive provision.

See also: *Steer Co. and Koons, Inc.* v. *United States*, 54 CCPA 81, C.A.D. 911 (1967); *United States* v. *Humble Oil & Refining Co. et al.*, 46 CCPA 138, C.A.D. 717 (1959); *United Supply & Mfg. Co. et al.* v. *United States, supra; Humble Oil & Refining Co. et al.* v. *United States*, 32 Cust. Ct. 32, C.D. 1577 (1954).

We have carefully considered defendant's other arguments, but they do not alter our conclusion that plaintiff has established a *prima facie* case that the substandard oil well casings are properly dutiable as structural shapes of iron or steel under paragraph 312 of the Tariff Act of 1930, as modified.

The protest is sustained, and judgment will be entered accordingly.